NO. 24-7246

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNION GOSPEL MISSION OF YAKIMA, WASH.,

*Plaintiff-Appellee*,

v.

ROBERT FERGUSON, in his official capacity as Attorney General of Washington State; ANDRETA ARMSTRONG, in her official capacity as Executive Director of the Washington State Human Rights Commission; and DEBORAH COOK, GUADALUPE GAMBOA, JEFF SBAIH, and HAN TRAN, in their official capacities as Commissioners of the Washington State Human Rights Commission,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Washington

No. 1:23-CV-3027-MKD
The Honorable Mary K. Dimke, United States District Court Judge

**AMICUS CURIAE BRIEF**
**WASHINGTON STATE DEPARTMENT OF LABOR & INDUSTRIES**
**IN SUPPORT OF APPELLANTS AND REVERSAL**

ROBERT W. FERGUSON
Attorney General

Anastasia Sandstrom
Senior Counsel
WSBA No. 24163
800 Fifth Ave. Ste. 2000
Seattle, WA 98104
(206) 464-6993

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................1

II.   INTEREST OF AMICUS..................................................1

III.  STATEMENT ABOUT FRAP 29(A)(4)(E) .......................2

IV.  STATEMENT OF THE CASE .........................................2

     A.  Constitutional and Statutory Background ....................2

     B.  Ruling of the District Court.........................................7

V.   ARGUMENT...................................................................7

     A.  Those with Religious Beliefs Could Argue that They Should Be Relieved from the Duty to Comply with Worker-Safety Laws ...7

     B.  The Minimum Wage Act, the Industrial Insurance Act, the Washington Industrial Safety and Health Act, and the Industrial Welfare Act Should Apply to Covered Workers Regardless of Exceptions ......................................................................8

     C.  Long Held Worker-Protection Laws Should Not Be Abandoned ...............................................................................11

VI.  CONCLUSION..............................................................12

i

# TABLE OF AUTHORITIES

### Cases

*Drinkwitz v. Alliant Techsystems, Inc.*,
  996 P.2d 582 (Wash. 2000) ........................................................................ 2

*Lopez Demetrio v. Sakuma Bros. Farms, Inc.*,
  355 P.3d 258 (Wash. 2015) ........................................................................ 6

*Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*,
  475 P.3d 164 (Wash. 2020) ........................................................................ 3

*Prince v. Massachusetts*,
  321 U.S. 158 (1944) .................................................................................... 6

*Tandon v. Newsom*,
  593 U.S. 61 (2021) .................................................................................. 1, 7

*W. Coast Hotel Co. v. Parrish*,
  300 U.S. 379, 399 (1937) ........................................................................... 4

### Statutes

1911 Wash. Sess. Laws, 345-46 .................................................................... 5

1913 Wash. Sess. Laws, 602 ................................................................. 3, 4, 7

1921 Wash. Sess. Laws, 43-44 ...................................................................... 1

1959 Wash. Sess. Laws, 1411-13 .................................................................. 4

1973 Wash. Sess. Laws, 213 .......................................................................... 6

29 U.S.C. § 203 ............................................................................................. 4

29 U.S.C. § 213 ............................................................................................. 4

29 U.S.C. § 655(d) ........................................................................................ 6

ii

29 U.S.C. § 667 .................................................................................. 6

Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 ................................ 4

Wash. Rev. Code § 43.22.030 ............................................................... 2

Wash. Rev. Code § 43.22.050 ............................................................... 2

Wash. Rev. Code § 43.22.270 ............................................................... 2

Wash. Rev. Code § 49.12 ................................................................... 6

Wash. Rev. Code § 49.12.010 ............................................................... 2

Wash. Rev. Code § 49.12.020 ............................................................... 6

Wash. Rev. Code § 49.12.121 ............................................................... 6

Wash. Rev. Code § 49.17.010 ............................................................ 2, 5

Wash. Rev. Code § 49.17.060(1) ........................................................... 6

Wash. Rev. Code § 49.17.080 ............................................................... 6

Wash. Rev. Code § 49.17.090 ............................................................... 6

Wash. Rev. Code § 49.46.005 ........................................................... 2, 4

Wash. Rev. Code § 49.46.005(1) ........................................................... 3

Wash. Rev. Code § 49.46.010(3) ........................................................... 8

Wash. Rev. Code § 49.46.010(3)(a)-(q) .................................................... 4

Wash. Rev. Code § 49.46.010(3)(b) ........................................................ 9

Wash. Rev. Code § 49.46.010(3)(c) ........................................................ 9

Wash. Rev. Code § 49.46.010(3)(d) ........................................................ 9

Wash. Rev. Code § 49.46.010(3)(i) ...................................................................... 9

Wash. Rev. Code § 49.46.020 ............................................................................. 4

Wash. Rev. Code § 49.46.130 ............................................................................. 4

Wash. Rev. Code § 49.46.130(2)(a)-(j) ............................................................... 4

Wash. Rev. Code § 49.46.210 ............................................................................. 4

Wash. Rev. Code § 49.60.040(11) ....................................................................... 7

Wash. Rev. Code § 51.04.010 ............................................................................. 5

Wash. Rev. Code § 51.04.020 ............................................................................. 2

Wash. Rev. Code § 51.12 .................................................................................... 5

Wash. Rev. Code § 51.12.010 ........................................................................ 5, 10

Wash. Rev. Code § 51.12.020 .................................................................... 5, 10, 11

Wash. Rev. Code § 51.12.020(4) ....................................................................... 10

Wash. Rev. Code § 51.16.060 ........................................................................... 10

Wash. Rev. Code § 51.32.060 ............................................................................. 5

Wash. Rev. Code § 51.32.067 ............................................................................. 5

Wash. Rev. Code § 51.32.080 ............................................................................. 5

Wash. Rev. Code § 51.32.090 ............................................................................. 5

Wash. Rev. Code § 51.32.096 ............................................................................. 5

Wash. Rev. Code § 51.36.010 ....................................................................... 5, 10

Wash. Rev. Code §§ 49.12.005(3) ....................................................................... 7

iv

Wash. Rev. Code §§ 49.12.010 ................................................................. 6

## Regulations

Wash. Admin. Code § 296-125-015(3) ......................................... 7, 11

Wash. Admin. Code § 296-125-015(4) ............................................ 7

Wash. Admin. Code § 296-126-092 ................................................. 6

Wash. Admin. Code § 296-126-220 ................................................. 6

## Constitutional Provisions

U.S. Const. amend. I ........................................................................ 7

Wash. Const. art. II, § 35 ................................................................ 3

v

## I.     INTRODUCTION

The district court's sweeping ruling, and unnuanced application of the Supreme Court's decision in *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam), creates uncertainty and invites litigation regarding any state law that includes exceptions to its application. One hundred thirty-five years of worker-safety protections should not be undermined by ruling that an exception to state law can subject that law to strict scrutiny on Free Exercise Clause grounds. Such an approach will hurt workers by casting doubt on important shields against dangerous activities and economic loss.

The Washington State Department of Labor and Industries (L&I) files this brief to show the unintended consequences that could result from affirming the district court's decision. L&I asks for reversal.

## II.     INTEREST OF AMICUS

The Washington Legislature has vested L&I with authority to protect worker rights since L&I's creation in 1921. 1921 Wash. Sess. Laws, 43-44. L&I implements the laws adopted to provide health and safety protections for Washington workers, including the Minimum Wage Act, Industrial Insurance Act, Washington Industrial Safety and Health Act, and the Industrial Welfare

1

Act. Wash. Rev. Code §§ 49.46.005, 51.04.020, 49.17.010, 49.12.010; Wash. Rev. Code §§ 43.22.030, .050, .270.[1]

These statutes give L&I an interest in ensuring that they remain vital and effective laws in the face of a potential (and erroneous) argument that these statutes are subject to strict scrutiny on Free Exercise Clause grounds because these statutes have exceptions. L&I's fundamental interest is to protect workers from economic suffering and dangerous work conditions.

### III. STATEMENT ABOUT FRAP 29(A)(4)(E)

Undersigned Counsel authored the brief in whole. No party, party's counsel, or other person contributed money that was intended to fund preparing or submitting the brief.

### IV. STATEMENT OF THE CASE

**A. Constitutional and Statutory Background**

Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000). The right to protection for workers is enshrined in the 1889 Washington State Constitution, which confers a fundamental right to

---

[1] All cites to the Washington Revised Code are to the current 2023 version. All cites to the Washington Administrative Code are to the current 2024 version. All cites to the United States Code are to the official 2018 version, and current supplements.

workers for health and safety protections in the workplace. Wash. Const. art. II, § 35; *Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 475 P.3d 164, 171 (Wash. 2020). This includes consideration of conditions affecting workers' health and safety, including minimum wage, industrial insurance, workplace safety, and conditions of employment like meal and rest breaks, and preventing child labor. As far back as 1913, the Legislature addressed certain "conditions of labor which have a pernicious effect on their health and morals. The State of Washington, therefore, exercising herein its police and sovereign power declares that inadequate wages and unsanitary conditions of labor exert such pernicious effect." 1913 Wash. Sess. Laws, 602.

Many Washington laws provide important workplace protections, with legislative choices about exceptions. For example, the Minimum Wage Act "is a subject of vital and imminent concern to the people of this state," and was adopted to provide "employment opportunities" and "protect[] the immediate and future health, safety and welfare of the people of this state." Wash. Rev. Code § 49.46.005(1). "Overtime work is particularly injurious, resulting in increased injuries, illness, and mortality." *Martinez-Cuevas*, 475 P.3d at 172. Minimum wage laws protect against exploitation and relieve the public purse from an employer's dereliction about paying wages. *See* Wash. Rev. Code

3

§ 49.46.005; *see also W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 389, 399 (1937). They place accountability on violative employers and reward compliant employers with a level playing field. *See W. Coast Hotel*, 300 U.S. at 399.

The Minimum Wage Act contains many exceptions to the definition of "employee," ranging from individuals engaged in casual labor about a private home to any seaman employed on a non-American vessel. Wash. Rev. Code § 49.46.010(3)(a)-(q). Because such individuals are not considered "employees" under the Minimum Wage Act's terms, their employers do not need to comply with the numerous protections in this act, such as minimum wage (Wash. Rev. Code § 49.46.020), overtime compensation (Wash. Rev. Code § 49.46.130), and paid sick leave (Wash. Rev. Code § 49.46.210). Likewise, there are additional exceptions to overtime laws under the Minimum Wage Act. *See* Wash. Rev. Code § 49.46.130(2)(a)-(j). Several Minimum Wage Act exceptions mirror exceptions under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 203, 213. The earliest version of Washington's minimum wage law was adopted in 1913. 1913 Wash. Sess. Laws, 602. The Minimum Wage Act was first adopted in 1959. 1959 Wash. Sess. Laws, 1411-13. FLSA was first adopted in 1938. Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060.

4

The Industrial Insurance Act provides sure and certain relief to workers when they have workplace injuries and diseases. Wash. Rev. Code § 51.04.010. Workers under the Industrial Insurance Act can receive medical treatment, vocational retraining, and disability payments for workplace injuries and diseases. Wash. Rev. Code §§ 51.32.060, .067, .080, .090, .096; Wash. Rev. Code § 51.36.010. And the Industrial Insurance Act emphasizes that "[t]here is a hazard in all employment and it is the purpose of this title to embrace all employments which are within the legislative jurisdiction of the state." Wash. Rev. Code § 51.12.010. There are many exceptions to the Industrial Insurance Act. *See* Wash. Rev. Code § 51.12. Numerous employments are specifically excluded from the Industrial Insurance Act's coverage, ranging from jockeys, private gardeners, newspaper vendors, and for-hire vehicle operators. Wash. Rev. Code § 51.12.020. This act was adopted in 1911. 1911 Wash. Sess. Laws, 345-46.

Workplace safety laws under the Washington Industrial Safety and Health Act assure "safe and healthful working conditions for every man and woman working in the state of Washington." Wash. Rev. Code § 49.17.010. Employers have the duty to "furnish to each of [their] employees a place of employment free from recognized hazards that are causing or likely to cause

serious injury or death." Wash. Rev. Code § 49.17.060(1). The Washington Industrial Safety and Health Act allows variances for some employers. Wash. Rev. Code §§ 49.17.080, .090. This law was adopted in 1973, 1973 Wash. Sess. Laws, 213, and is patterned off the federal Occupational Safety and Health Act, 29 U.S.C. §§ 655(d), 667.

Finally, laws governing meal and rest breaks, and child labor under the Industrial Welfare Act prevent working when tired, avoiding dangerous situations caused by fatigue, and dangerous employment for children. Wash. Rev. Code § 49.12. They ensure breaks "critical to the health and effectiveness of employees." *Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 355 P.3d 258, 263 (Wash. 2015); Wash. Rev. Code §§ 49.12.010, .020; *see also* Wash. Admin. Code § 296-126-092. Child labor laws protect children from working in dangerous conditions beyond their capabilities for their age. Wash. Rev. Code § 49.12.121; Wash. Admin. Code § 296-126-220. In the words of the Supreme Court, "[a]mong evils most appropriate for [state] action are [those against] the crippling effects of child employment." *Prince v. Massachusetts*, 321 U.S. 158, 168-69 (1944).

The Industrial Welfare Act's meal and rest breaks laws and child labor restrictions have exceptions. Wash. Rev. Code §§ 49.12.005(3), (4); Wash.

Admin. Code §§ 296-125-015(3), (4). The first industrial welfare laws were developed in 1913. 1913 Wash. Sess. Laws, 602.

## B. Ruling of the District Court

The district court relied on *Tandon* to hold that the Washington Law Against Discrimination (WLAD) infringed on Union Gospel Mission's free exercise of religion. The district court decided that because the WLAD exempts employers with fewer than eight employees, Wash. Rev. Code § 49.60.040(11), this put religious organizations on unequal footing with non-religious organizations, so strict scrutiny applied. The Appellants appeal.

## V. ARGUMENT

## A. Those with Religious Beliefs Could Argue that They Should Be Relieved from the Duty to Comply with Worker-Safety Laws

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. The district court essentially decided that, because the WLAD excepts those organizations with under eight employees, this exception means that some secular employers (from those organizations with under eight employees receiving the exception) are treated better than religious employers (from those not receiving the exception because they have over eight employees). The district court's interpretation of *Tandon* stretches Free Exercise law beyond recognition to

potentially give any person with a religious belief about whether a statute is compatible with their religion a claim that strict scrutiny applies to any of the uncountable state statutes that have exceptions. Indeed, it is the exception, rather than the rule, that a worker-safety statute does not have at least some exceptions.

Applying the district court's reasoning could embolden religious employers to argue that they should be exempt from a wide swath of worker-safety regulations. Although such an approach is not supported by the law, and L&I does not concede as such, the district court's rule could prompt burdensome litigation about workers' rights.

**B. The Minimum Wage Act, the Industrial Insurance Act, the Washington Industrial Safety and Health Act, and the Industrial Welfare Act Should Apply to Covered Workers Regardless of Exceptions**

Washington's worker-safety laws apply to most Washingtonians but have some exceptions. For example, the Minimum Wage Act has exceptions to the definition of "employee," Wash. Rev. Code § 49.46.010(3), and if one of these exceptions applies to an individual, the employer does not need to pay minimum wage, overtime, or paid sick leave to that individual. Religious employers generally must pay minimum wage, overtime, and paid sick leave to an employee unless there is no employer–employee relationship or "services

are rendered to such organizations gratuitously" by non-staff members. Wash. Rev. Code § 49.46.010(3)(d). Under the district court's reasoning, a religious employer could bring an as-applied challenge to the requirement that it pay minimum wage, overtime, and paid sick leave to employees who are not volunteers providing services gratuitously. Such a challenge could be lodged by a person who has a religious belief that compliance with the Minimum Wage Act is inconsistent with their religious beliefs. And it could be lodged on the grounds that because some employment activities in secular settings—for example, any individual acting in a bona fide administrative capacity, caring for children in a charitable organization in certain contexts, or performing casual labor in a private home, activities that are all exempt from the definition of an employee, Wash. Rev. Code § 49.46.010(3)(b), (c), (i)—are comparable to the labor that the religious organization's employee performs as part of the organization's religious exercise, the Minimum Wage Act as applied to the organization must pass strict scrutiny. And if successful, a religious employer would not have to pay minimum wage to, say, an employee providing childcare.

The breadth of the district court's ruling raises many similar examples under the numerous laws that L&I enforces to protect workers' safety and

9

health. Consider the Industrial Insurance Act, which ensures that injured workers receive treatment, wage replacement benefits, and disability benefits if they are injured at work, benefits which are paid for by employer premiums (as well as worker payroll deductions). Under the Industrial Insurance Act, all employments are included within the Act's mandatory coverage, with enumerated exceptions. Wash. Rev. Code §§ 51.12.010, .020. Employment with religious organizations is covered under the Industrial Insurance Act, unless the person is performing services in return for aid or sustenance only. Wash. Rev. Code § 51.12.020(4).

Under the district court's reasoning, a religious employer could challenge at least two different aspects of L&I's enforcement of the Industrial Insurance Act. First, if one of its employees was injured on the job and filed a workers' compensation claim, it could challenge the allowance of the claim and its employee's ability to receive medical treatment. Wash. Rev. Code § 51.36.010. Second, it could challenge the requirement that it pay workers' compensation premiums. Wash. Rev. Code § 51.16.060. In both cases, it could argue that strict scrutiny applies because secular employers who employ domestic servants, jockeys, private gardeners, newspaper vendors, and for-hire vehicle operators, do not have to provide coverage under Wash. Rev. Code §

10

51.12.020. If successful, the religious employer would not have to pay premiums, and its employees potentially would receive no workers' compensation coverage if they were injured at work. Since the Industrial Insurance Act's inception in 1911, L&I has worked to ensure that covered workers receive appropriate medical care and treatment if they are hurt, including while working for religious employers, and such a challenge would rewrite this history to deny such protection to workers.

Finally, a person could have the religious belief that children should be working to reflect religious values, and the fact that there are exceptions to the child labor laws (*e.g.*, newspaper carriers or minors employed in house-to-house sales by their parents) could mean the court could apply strict scrutiny to the child labor laws. Wash. Admin. Code § 296-125-015(3).

## C.      Long Held Worker-Protection Laws Should Not Be Abandoned

The abandonment of worker-safety laws for a significant number of workers would harm workers both economically and in terms of safety. L&I does not believe that abandoning workers in religious organizations in this way is legally correct, but if some of the potential claims detailed above were to succeed, workers in religious organizations could face a new reality overnight where they would not receive medical treatment from L&I for their work

injuries or diseases; would not need to be paid minimum wage, overtime, or paid sick leave; would not have their wages replaced if a work injury or disease prevented them from working; and would not need to receive meal or rest breaks, among many other protections. They would be allowed to be treated differently than most Washington workers. That statutes like Washington's worker-protection statutes have exceptions does not give a religious employer a blank check to avoid state regulation. Religious beliefs, however deeply held, should not impair 135 years of constitutional protections and over one hundred years of state regulation for workers.

## VI.  CONCLUSION

This Court should reverse the district court.

RESPECTFULLY SUBMITTED this 6th day of January, 2025.

ROBERT W. FERGUSON
Attorney General

*s/Anastasia Sandstrom*
ANASTASIA SANDSTROM, WSBA 24163
Senior Counsel
800 Fifth Ave., Ste. 2000
Seattle, WA 98104
(206) 464-6993
*Attorney for Amicus Curiae*
Department of Labor and Industries

12

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8.** **Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-7246

I am the attorney or self-represented party.

**This brief contains** 2,371 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Anastasia Sandstrom **Date** 1/6/25

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*