No. 24-7246

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

UNION GOSPEL MISSION OF YAKIMA, WASHINGTON,

*Plaintiff-Appellee*,

v.

ROBERT FERGUSON, in his official capacity as Attorney General of
Washington, ANDRETA ARMSTRONG, in her official capacity as
Executive Director of the Washington State Human Rights
Commission; and GUADALUPE GAMBOA, HAN TRAN, JEFF
SBAIH, LUC JASMIN, and CHELSEA DIMAS, in their official
capacities as Commissioners of the Washington State Human Rights
Commission

*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON AT YAKIMA
No. 1:23-cv-3027
Hon. Mary K. Dimke
United States District Court Judge

_____

## BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION,
## AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON, AND
## AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE IN
## SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL

_____

*(Counsel listed on next page)*

Adrien Leavitt
La Rond Baker
ACLU OF WASHINGTON
  FOUNDATION
P.O. Box 2728
Seattle, Washington 98111
Tel: (206) 624-2184
aleavitt@aclu-wa.org
baker@aclu-wa.org

Alex Luchenitser
Jenny Samuels
AMERICANS UNITED FOR
  SEPARATION OF CHURCH AND
  STATE
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 466-7308
luchenitser@au.org
samuels@au.org

Joshua Block
 *Counsel of Record*
Louise Melling
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
jblock@aclu.org
lmelling@aclu.org

Aditi Fruitwala
Daniel Mach
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
915 15th St. NW, 6th Floor
Washington, DC 20005
Tel: (212) 549-2100
afruitwala@aclu.org
dmach@aclu.org

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, *Amici Curiae* state that they do not have a parent corporation and that no publicly held corporation owns ten percent or more of their stock.

Date: January 6, 2025

/s/ Joshua Block
Joshua Block
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES.................................................................................. iii

STATEMENT OF INTEREST OF *AMICI CURIAE* ................................................1

INTRODUCTION ...................................................................................................3

   I.  The WLAD's Prohibition of Employment Discrimination Is a Neutral and Generally Applicable Law Under *Smith*.................................................................6

     A. Neutral and Generally Applicable Employment Laws Frequently Distinguish Between Small and Large Employers. ....................................7

     B. The Harm Caused by An Exemption for Small Employers—Whether Religious or Secular—Is Not Similar to the Harm Caused by an Exemption for Large Religious Employers. .............................................10

   II. The District Court's Approach to General Applicability Has No Limiting Principle and Is Inconsistent with *Smith* Itself. .............................................15

CONCLUSION ....................................................................................................18

CERTIFICATE OF COMPLIANCE......................................................................20

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Hardy*,
    784 P.2d 1258 (Wash. 1990) (en banc) ...................................................9

*Braunfeld v. Brown*,
    366 U.S. 599 (1961)..........................................................................18

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014)..........................................................................16

*Chavez v. San Francisco Bay Area Rapid Transit Dist.*,
    723 F. Supp. 3d 805 (N.D. Cal. 2024) ...................................................14

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)........................................................................4, 7, 11

*Denver Bible Church v. Polis*,
    No. 20-1391, 2022 WL 200661 (10th Cir. Jan. 24, 2022) .....................................7

*Doe v. Cath. Relief Servs.*,
    618 F. Supp. 3d 244 (D. Md. 2022) ............................................... 13, 14

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021).......................................................... 13, 16

*Does 1-6 v. Mills*,
    16 F.4th 20 (1st Cir. 2021) ...................................................................14

*Emp. Div. v. Smith*,
    494 U.S. 872 (1990)............................................................... 3, 6, 7, 18

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
    82 F.4th 664 (9th Cir. 2023)....................................................................2

*Fitzgerald v. Roncalli High Sch., Inc.*,
    73 F.4th 529 (7th Cir. 2023)....................................................................2

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) ........................................................................ 1, 3, 6

*Grace United Methodist Church v. City of Cheyenne*,
   451 F.3d 643 (10th Cir. 2006) ........................................................4

*Griffin v. Eller*,
   922 P.2d 788 (Wash. 1996) (en banc) ............................................ 9, 12

*Kane v. De Blasio*,
   19 F.4th 152 (2d Cir. 2021) .........................................................10

*Mahmoud v. McKnight*,
   102 F.4th 191 (4th Cir. 2024), *pet. for cert. filed*, No. 24-297
   (U.S. Sep. 16, 2024) .....................................................................2

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
   584 U.S. 617 (2018) .....................................................................1

*McMahon v. World Vision, Inc.*,
   704 F. Supp. 3d 1121 (W.D. Wash. 2023), *appeal filed*, No. 24-3259
   (9th Cir. May 22, 2024) ...............................................................10

*McMahon v. World Vision, Inc.*,
   No. 24-3259 (9th Cir. appeal docketed May 22, 2024) ........................2

*Mid Vermont Christian Sch. v. Bouchey*,
   No. 24-1704 (2d Cir. appeal docketed June 27, 2024) ........................2

*Nelson v. Louisville-Jefferson Cnty. Metro Gov't*,
   Nos. 22-5884, 22-5912, 2024 WL 1638860 (6th Cir. Apr. 16, 2024)....................2

*Olympus Spa v. Armstrong*,
   No. 23-4031 (9th. Cir. appeal docketed Dec. 8, 2023) ........................1

*Robinson v. Fair Emp. & Hous. Comm'n*,
   825 P.2d 767 (Cal. 1992) .............................................................10

*Spivack v. City of Philadelphia*,
   109 F.4th 158 (3d Cir. 2024)........................................................14

iv

*State v. Arlene's Flowers, Inc.*,
  193 Wash. 2d 469 (2019) ..................................................1

*Tandon v. Newsom*,
  593 U.S. 61 (2021)................................................ 3, 6, 7, 12

*We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
  76 F.4th 130 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024) ......................14

*We the Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ................14

**Federal Statutes**

17 U.S.C. §§ 106, 107–122 ...........................................17

33 U.S.C. §§ 1251–1387, 1311(a) ...................................17

42 U.S.C. § 2000e(b) ...................................................8

**State Statutes**

Wash. Rev. Code Ann. § 49.60.050 (West 2023)....................................4

Wash. Rev. Code. Ann. § 49.60.010 (West 2023)................................4, 11

Wash. Rev. Code. Ann. § 49.60.040 (West 2023)................................4, 7

28 R.I. Gen. Laws Ann. § 28-5-6(9)(i) (2023) .......................8

43 Pa. Cons. Stat. § 954(b) (2023) ..................................8

Ala. Code § 25-1-20(2) (2023) ......................................8

Ariz. Rev. Stat. Ann. § 41-1461(7)(a) (2023) ................. 8, 16

Ark. Code Ann. § 16-123-102(7) (West 2023) ......................8

Cal. Gov't Code § 12926(d) (West 2023) ...................... 8, 16

Del. Code Ann. tit. 19, § 710(7) (2023) ...........................8

Fla. Stat. Ann. § 760.02(7) (West 2023) .................................................8

Ga. Code Ann. § 45-19-22(6) (West 2023)...............................................8

Idaho Code Ann. § 67-5902(6) (West 2023)......................................... 8, 16

Ind. Code § 22-9-1-3(h) (2023) ...............................................................8

Kan. Stat. Ann. § 44-1002(b) (2024) .......................................................8

Ky. Rev. Stat. § 344.030(2) (West 2023) .................................................8

La. Stat. Ann. § 23:302(2) (2023) ...........................................................8

Mass. Gen. Laws ch. 140, § 131M (2023)...............................................17

Md. Code Ann., State Gov't § 20-601(d)(1)(i)(2) (West 2023)................8

Mo. Rev. Stat. § 213.010(8) (2023) .........................................................8

N.C. Gen. Stat. Ann. § 143-422.2(a) (West 2023)...................................8

N.H. Rev. Stat. Ann. § 354-A:2(VII) (2023) ...........................................8

N.M. Stat. Ann. § 28-1-2(B) (2023) ........................................................8

N.Y. Penal Law § 265.00 (McKinney 2023) ...........................................17

Neb. Rev. Stat. § 48-1102(2) (2023) ........................................................8

Nev. Rev. Stat. § 613.310(2) (2023) ........................................................8

Ohio Rev. Code Ann. § 4112.01(2) (West 2023)......................................8

S.C. Code Ann. § 1-13-30(e) (2024)........................................................8

Tenn. Code Ann. § 4-21-102(5) (West 2023) ...........................................8

Tex. Lab. Code Ann. § 21.002(8)(A) (2023) ............................................8

Utah Code Ann. § 34A-5-102(1)(i)(i)(D) (West 2023)............................8

Va. Code Ann. § 2.2-3905(A) (West 2023) ...................................................8

W. Va. Code § 16B-17-3(d) (2023) ............................................................8

Wyo. Stat. Ann. § 27-9-102(b) (West 2023) ................................................8

**Other Authorities**

110 Cong. Rec. S13081, 85–86 (daily ed. June 9, 1964) ...............................9

Richard Carlson, *The Small Firm Exemption & the Single Employer Doctrine in Employment Discrimination Law*, 80 St. John's L. Rev. 1197 (2006) ..............8, 9

Christine Clarridge, *How His Twin Brother's Deathbed Plea Was a Call to Action for Washington State's Insurance Commissioner*, Seattle Times (Oct. 18, 2021, 8:00 AM), https://perma.cc/GCP9-B5FB ...................................................... 5, 15

*Leading Companies Headquartered in Washington in the United States in 2024, by Number of Employees*, Statista (Mar. 2024), https://perma.cc/3WJU-UY3A ......12

*Our Mission*, Providence, https://perma.cc/668C-EKHH .......................................12

Eugene Volokh, *My Argument for Preserving Employment Division v. Smith*, Reason.com (May 26, 2020, 11:53 AM), https://perma.cc/RRB5-ZBY4 ...........17

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

The American Civil Liberties Union Foundation ("ACLU") is a nationwide, nonprofit, nonpartisan organization with nearly two million members and supporters dedicated to the principles of liberty and equality embodied in the Constitution. The ACLU of Washington ("ACLU-WA") is one of the ACLU's statewide affiliates with over 120,000 members and supporters. As organizations that advocate for religious freedom and free speech, as well as equal rights for people of different faiths, genders, sexual orientations, and races, among others, the ACLU and the ACLU-WA have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws.

The ACLU and ACLU-WA have appeared as direct counsel or amicus in many cases nationwide involving religious liberties and equality. *See, e.g.*, *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469 (2019) (en banc) (counsel); *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) (counsel); *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617 (2018) (counsel); *Olympus Spa v. Armstrong*, No. 23-4031 (9th. Cir. appeal docketed Dec. 8, 2023) (amicus); *Mahmoud v. McKnight*, 102

---

[1] Under Fed. R. App. P. 29(a)(2), *Amici* submit this brief without an accompanying motion for leave to file because all parties have consented to its filing. Under Fed. R. App. P. 29(a)(4)(E), *Amici* state that: (i) neither party's counsel authored the brief in whole or in part; (ii) neither party, nor their counsel, contributed money that was intended to fund preparing or submitting the brief; and (iii) no person other than *Amici*, their members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

1

F.4th 191 (4th Cir. 2024), *pet. for cert. filed*, No. 24-297 (U.S. Sep. 16, 2024) (amicus); *Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529 (7th Cir. 2023) (amicus); *McMahon v. World Vision, Inc.*, No. 24-3259 (9th Cir. appeal docketed May 22, 2024) (amicus).

Americans United for Separation of Church and State ("Americans United") is a national, nonpartisan organization that for over seventy-five years has brought together people of all faiths and the nonreligious who share a deep commitment to religious freedom as a shield to protect but never a sword to harm others. Americans United frequently appears as amicus and counsel in cases concerning religious exemptions and discrimination. *See, e.g.*, *Mid Vermont Christian Sch. v. Bouchey*, No. 24-1704 (2d Cir. appeal docketed June 27, 2024) (amicus); *McMahon v. World Vision, Inc.*, No. 24-3259 (9th Cir. appeal docketed May 22, 2024) (amicus); *Nelson v. Louisville-Jefferson Cnty. Metro Gov't*, Nos. 22-5884, 22-5912, 2024 WL 1638860 (6th Cir. Apr. 16, 2024) (amicus); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664 (9th Cir. 2023) (en banc) (counsel). Americans United thus has an interest in ensuring that antidiscrimination protections are not eroded through the misuse of the Free Exercise Clause.

2

**INTRODUCTION**

In an unprecedented ruling, the district court held that the Free Exercise Clause entitles employers to violate the Washington Law Against Discrimination (the "WLAD") if they have a sincere religious objection to complying. According to the district court, because the WLAD—like Title VII and countless other laws and regulations for employers—has an exemption for *small* employers (whether religious or secular) with fewer than a particular number of employees, the Free Exercise Clause requires a similar exemption for *large* employers who wish to discriminate for religious reasons. 1-ER-010, 013.

The district court is wrong. Under the Supreme Court's holding in *Employment Division v. Smith*, 494 U.S. 872 (1990), government regulations that "incidentally burden[] religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citing *Smith*, 494 U.S. at 878–82). To assess whether a particular regulation is neutral and generally applicable, the Supreme Court has instructed courts to determine whether the regulation treats "any comparable secular activity more favorably than religious exercise" when "judged against the asserted government interest that justifies the regulation at issue." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam) (emphasis omitted). If a secular exemption undermines the governmental interest to "a similar or greater degree"

3

than a religious exemption would, then the law is not neutral and generally applicable, and it must be subjected to strict scrutiny. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993). If, however, the regulation treats comparable secular and religious activity the same way, then rational basis is the proper standard of review. *Id.* at 531 ("[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."); *accord. Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) ("[A] law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge.").

Evaluated against Washington's interest in the "elimination and prevention of discrimination in employment" advanced by the WLAD, Wash. Rev. Code. Ann. § 49.60.010 (West 2023), an exemption for large religious employers like Appellee—which has more than 150 employees (3-ER-304)—is not comparable to the WLAD's existing exemption for employers with fewer than eight employees. Wash. Rev. Code. Ann. § 49.60.040(11) (West 2023) In exempting small employers, the WLAD drafters intended to concentrate the WLAD's substantive protections, as well as the protective enforcement power of the Washington State Human Rights Commission ("Commission"), on employers whose discriminatory actions affect the greatest number of people. *See* Wash. Rev. Code Ann. § 49.60.050 (West 2023)

4

(provision of WLAD creating the Commission). If an exempt small employer (whether religious or secular) chooses to adopt a discriminatory policy, that employer's discrimination would affect a maximum of seven employees. But if a larger employer (whether religious or secular) chooses to adopt a discriminatory policy, that employer's discrimination would affect many more people. Because a large employer that discriminates would harm more people than a small employer that discriminates, an exemption for large religious employers would undermine the WLAD's interest in eradicating discrimination much more aggressively than the existing exemption for small employers.

Affirming the district court's conclusion would effectively strip an enormous number of employees of critical antidiscrimination protections. That would include not only employees of religious organizations but also the thousands of employees of the religiously affiliated hospitals that account for nearly half of the hospital beds in the state and all those who work for the myriad religiously affiliated charities, among others. *See* Christine Clarridge, *How His Twin Brother's Deathbed Plea Was a Call to Action for Washington State's Insurance Commissioner*, Seattle Times (Oct. 18, 2021, 8:00 AM), https://perma.cc/GCP9-B5FB (finding that forty-five percent of Washington's hospital beds are run by religious healthcare systems). The untold number of employees put at risk by such reasoning only grows when accounting for secular businesses whose owners have their own religious objections to the WLAD

5

and who might also be able to assert free-exercise claims to escape compliance. Beyond the realm of employment discrimination law, the district court's logic threatens to exempt religious employers from a vast number of regulations in myriad areas of law, since all it would take is one secular exemption to trigger—and fail— strict-scrutiny analysis. That cannot be the law.

I.    **The WLAD's Prohibition of Employment Discrimination Is a Neutral and Generally Applicable Law Under *Smith*.**

Under *Smith*, government regulations "are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton*, 593 U.S. at 533 (citing *Smith*, 484 U.S. at 878–82). But "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 593 U.S. at 62. "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* Thus, a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534.

Under these standards, the WLAD's prohibition on employment discrimination is a neutral and generally applicable law. Like many other employment laws and regulations, the WLAD exempts small employers with fewer

6

than a certain number of employees. Wash. Rev. Code. Ann. § 49.60.040(11) (West 2023) (exempting employers with fewer than eight employees). But "the mere existence of a secular exemption is not sufficient to establish a claim for a religious exemption." *Denver Bible Church v. Polis*, No. 20-1391, 2022 WL 200661, at *9 (10th Cir. Jan. 24, 2022). A secular exemption requires a religious exemption only when it undermines the governmental interests to "a similar or greater degree" than a religious exemption would. *Lukumi*, 508 U.S. at 543. The WLAD's existing exemption for small employers (whether religious or secular) with fewer than eight employees undermines Washington's interest in eliminating discrimination to *some* extent—but an exemption for large religious employers would undermine those interests far more aggressively. Small employers and large religious employers are thus not "comparable" when "judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62.

### A. Neutral and Generally Applicable Employment Laws Frequently Distinguish Between Small and Large Employers.

Antidiscrimination laws, along with other labor and employment regulations, are archetypical examples of the type of neutral and generally applicable laws that are usually not subject to strict scrutiny under the Free Exercise Clause. *See Smith*, 494 U.S. at 889 (citing "laws providing for equality of opportunity for the races" and "social welfare legislation such as minimum wage laws" as examples of generally applicable laws that should receive rational-basis review). A commonplace feature

7

of such laws—including the WLAD—is that they distinguish between small and large employers. At least thirty other states have employment discrimination laws that exempt employers with fewer than a threshold number of employees from the scope of the laws' coverage.[2] And Title VII has a similar provision limiting coverage to employers with fifteen or more employees. *See* 42 U.S.C. § 2000e(b).[3]

---

[2] *See, e.g.*, Ala. Code § 25-1-20(2) (2023) (exempting employers with fewer than twenty employees); Ariz. Rev. Stat. Ann. § 41-1461(7)(a) (2023) (same re employers with fewer than fifteen employees); Ark. Code Ann. § 16-123-102(7) (West 2023) (same re nine employees); Cal. Gov't Code § 12926(d) (West 2023) (same re five); Del. Code Ann. tit. 19, § 710(7) (2023) (same re four); Fla. Stat. Ann. § 760.02(7) (West 2023) (same re fifteen); Ga. Code Ann. § 45-19-22(6) (West 2023) (same re fifteen); Idaho Code Ann. § 67-5902(6) (West 2023) (same re five); Ind. Code § 22-9-1-3(h) (2023) (same re six); Kan. Stat. Ann. § 44-1002(b) (2024) (same re four); Ky. Rev. Stat. § 344.030(2) (West 2023) (same re eight); La. Stat. Ann. § 23:302(2) (2023) (same re twenty); Md. Code Ann., State Gov't § 20-601(d)(1)(i)(2) (West 2023) (same re fifteen); Mass. Gen. Laws ch. 151B, § 1(5) (2023) (same re six); Mo. Rev. Stat. § 213.010(8) (2023) (same re six); Neb. Rev. Stat. § 48-1102(2) (2023) (same re fifteen); Nev. Rev. Stat. § 613.310(2) (2023) (same re fifteen); N.H. Rev. Stat. Ann. § 354-A:2(VII) (2023) (same re six); N.M. Stat. Ann. § 28-1-2(B) (2023) (same re four); N.C. Gen. Stat. Ann. § 143-422.2(a) (West 2023) (same re fifteen); Ohio Rev. Code Ann. § 4112.01(2) (West 2023) (same re four); 43 Pa. Cons. Stat. § 954(b) (2023) (same re four); 28 R.I. Gen. Laws Ann. § 28-5-6(9)(i) (2023) (same re four); S.C. Code Ann. § 1-13-30(e) (2024) (same re fifteen); Tenn. Code Ann. § 4-21-102(5) (West 2023) (same re eight); Tex. Lab. Code Ann. § 21.002(8)(A) (2023) (same re eight); Utah Code Ann. § 34A-5-102(1)(i)(i)(D) (West 2023) (same re fifteen); Va. Code Ann. § 2.2-3905(A) (West 2023) (same re fifteen); W. Va. Code § 16B-17-3(d) (2023) (same re twelve); Wyo. Stat. Ann. § 27-9-102(b) (West 2023) (same re two).

[3] Indeed, "[t]he practice of exempting small firms from employment laws began long before Title VII," dating back to "[e]arly occupational safety laws and workers' compensation laws," as well as "New Deal-era laws such as the Wagner Act and Fair Labor Standards Act of 1938." Richard Carlson, *The Small Firm Exemption & the Single Employer Doctrine in Employment Discrimination Law*, 80 St. John's L. Rev. 1197, 1197–98 (2006).

A common rationale for these provisions is that they focus the law's impact and the government's enforcement power on employers whose labor practices have a greater effect on the labor market. As the Washington State Supreme Court has explained, one purpose of the WLAD's small-employer exemption was, "[i]n the interest of cost effectiveness, to confine public agency enforcement of the law to employers whose practices affect a substantial number of persons." *Griffin v. Eller*, 922 P.2d 788, 792 (Wash. 1996) (en banc) (citation omitted); *see also Bennett v. Hardy*, 784 P.2d 1258, 1265 (Wash. 1990) (en banc) (same).

Similar motivations underlie small-employer exemptions in other employment discrimination statutes. *See, e.g.*, Carlson, *supra*, at 1268 (canvassing Title VII's legislative history and concluding that "[t]he solution [to fears of inconsistent and difficult enforcement] was to approve an agency of limited size and mandate to target cases yielding the greatest impact and the greatest number of employment opportunities for minorities"—hence Title VII's own small-employer exemption); 110 Cong. Rec. S13085–86 (daily ed. June 9, 1964) (Senator Cotton worrying that a "small army" would be required "[i]f it bec[a]me necessary to investigate every complaint" and that "enforcement would become well nigh impossible; and the enforcement which did occur would be found to be spotty"); *id.* at S13081 (Senators Clark and Case relying on small-employer exemption to assure Congress that the Equal Employment Opportunity Commission would be able to

9

operate efficiently); *Robinson v. Fair Emp. & Hous. Comm'n*, 825 P.2d 767, 773 (Cal. 1992) (explaining that California's Fair Employment and Housing Act contains a small-employer exemption because "by looking to the number of employees on the payroll the enforcement agency is able to channel its resources into enforcement where job opportunities will be maximized," which is "consistent with the purpose of the legislation").

### B. The Harm Caused by An Exemption for Small Employers—Whether Religious or Secular—Is Not Similar to the Harm Caused by an Exemption for Large Religious Employers.

The WLAD's exception for small employers does not undermine the statute's neutrality and general applicability under *Smith*. The WLAD's exemption for employers with fewer than eight employees applies equally to all types of small employers, whether religious or secular. Thus, the WLAD equally regulates large religious and large secular employers, and equally exempts small religious and small secular employers. As another district court in this Circuit has explained, "the mere existence of an exemption for *all small* employers—religious and secular alike— does not transform Title VII and WLAD from neutral and generally applicable laws into those triggering strict scrutiny." *McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121, 1142–43 (W.D. Wash. 2023), *appeal filed*, No. 24-3259 (9th Cir. May 22, 2024); *cf. Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) ("[N]either the

10

Supreme Court . . . nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'").

Without acknowledging contrary precedent, the district court in this case reached a different result based on a misapplication of *Tandon*. The court reasoned "[t]hat certain secular employers are shielded from WLAD enforcement and religious organizations are not—except with respect to ministerial positions—likely undermines the statute's stated interest in 'eliminat[ing]' and 'prevent[ing]' discrimination." 1-ER-010 (quoting Wash. Rev. Code. Ann. § 49.60.010 (West 2023)) (alterations in original). It thus required Appellants to extend an exemption from the WLAD to all religious employers, on the theory that the WLAD's small-employer exemption "put[s] for-profit, non-religious organizations on unequal footing with Plaintiff and other religious organizations like it." *Id.*

That was error. The question in determining whether a law is neutral and generally applicable is not whether an existing exception undermines "the asserted government interest that justifies" the statute in a vacuum. Rather, the question is whether the exception "endangers these interests [to] a similar or greater degree" than a religious exemption would. *Lukumi*, 508 U.S. at 543. Thus, in *Tandon*, the Court explained that California's COVID restrictions would have been neutral and generally applicable if the secular activities permitted by the restrictions "pose[d]

11

lesser risk of transmission than applicants' proposed religious exercise at home." 593 U.S. at 63 (emphasis omitted).

Here, even if the WLAD's exception for small employers with fewer than eight employees undermines Washington's interest in eliminating discrimination *to some extent*, an exemption for large religious employers would undermine those interests to a far *greater* degree. To illustrate, a small employer's discrimination exposes, at maximum, seven people to discrimination. By contrast, an exemption for Appellant, who employs over 150 people, would expose at least ten times that to discrimination. 3-ER-228 (Appellant "employs more than 150 likeminded believers"); *accord.* 3-ER-251, 3-ER-304.[4] An exemption for large religious employers thus undermines the governmental interest underlying the WLAD in a way that the small-employer exemption simply does not. *See Tandon*, 593 U.S. at 62 ("Comparability is concerned with the risks various activities pose, not the reasons"

---

[4] Other religious employers in Washington are even larger. For instance, Providence Health & Services ("Providence") is a Catholic healthcare system whose stated mission is, "[a]s expressions of God's healing love, witnessed through the ministry of Jesus," to be "steadfast in serving all, especially those who are poor and vulnerable." *See Our Mission*, Providence, https://perma.cc/668C-EKHH (last visited Jan. 2, 2024). Providence is also the sixth-largest employer in the state of Washington, with approximately 120,000 employees. *See Leading Companies Headquartered in Washington in the United States in 2024, by Number of Employees*, Statista (Mar. 2024), https://perma.cc/3WJU-UY3A. To allow Providence to circumvent the WLAD would substantially undermine the legislature's interest in focusing on regulating Washington "employers whose practices affect a substantial number of persons" by exposing tens of thousands of employees to potential discrimination. *Griffin*, 922 P.2d at 792.

those activities are undertaken.); *see also Doe v. Cath. Relief Servs.*, 618 F. Supp. 3d 244, 255–56 (D. Md. 2022) (rejecting similar argument with respect to, *inter alia*, Title VII's small-employer exemption and distinguishing *Tandon* because unless the party can establish that "businesses with 15 or fewer employees" are "comparable to the religious activity of a social services nonprofit with over 7000 employees," "no such relatively close comparison" exists), *opinion vacated in part on reconsideration on other grounds*, Civil No. CCB-20-1815, 2023 WL 155243 (D. Md. Jan. 11, 2023).

Sanctioning such large-scale discrimination runs directly against the intent of the drafters of the WLAD, whose priority was efficient and productive prosecution of larger-scale employment discrimination. *See supra* Section I.A. In fact, it is reasonable to see the small-employer exemption here as *advancing* the WLAD's interest in eliminating discrimination—rather than undermining it, even minimally—by ensuring that enforcement is concentrated on larger-scale instances of discrimination. *Cf. Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) (explaining that a school district's vaccine mandate was generally applicable, despite its medical exemption, because the medical exemption "serve[d] the primary interest for imposing the mandate—protecting student 'health and

13

safety'—and so [did] not undermine the District's interests as a religious exemption would").[5]

*    *    *

Rational basis is thus the proper standard of review for the WLAD. The district court "need not engage in a strict scrutiny analysis that would apply if a truly comparable secular institution were being treated favorably compared to" Appellee. *Cath. Relief Servs.*, 618 F. Supp. 3d at 256.

---

[5] This Court's holding in *San Diego* is consistent with that of other circuits. *See Does 1-6 v. Mills*, 16 F.4th 20, 30–31 (1st Cir. 2021) ("Providing a medical exemption does not undermine any of [the state's] three goals, let alone in a manner similar to the way permitting an exemption for religious objectors would," and "[n]o case in this circuit and no case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable"); *Spivack v. City of Philadelphia*, 109 F.4th 158, 174 (3d Cir. 2024) (medical exemption did not "undermine[] the government's asserted interests like a religious exemption would"); *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 151 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024) ("medical but not religious exemptions serve" state's purpose "to protect the health and safety of Connecticut students and the broader public"); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 287 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (the "medically ineligible" are "substantially distinguish[able]" "from the religious objectors in light of the State's asserted purposes"); *accord. Chavez v. San Francisco Bay Area Rapid Transit Dist.*, 723 F. Supp. 3d 805, 813–14 (N.D. Cal. 2024) ("Nor does the medical exemption undermine general applicability. Courts confronted with well-defined medical exemptions to COVID-19 mandates have held that the existence of such an exemption does not trigger strict scrutiny.") (citing *Does 1-6*, 16 F.4th at 30–31, and *We the Patriots*, 17 F.4th at 284–88).

14

## II.    The District Court's Approach to General Applicability Has No Limiting Principle and Is Inconsistent with *Smith* Itself.

The district court's conclusion that religious employers should be categorically exempted from the WLAD on the basis of its small-employer exception would have far-reaching consequences. To excuse *all* of these employers for liability from *every* kind of discrimination the WLAD enumerates—including discrimination based not just on sexual orientation, but also race, sex, national origin, and so on— would license an enormous amount of otherwise illegal discrimination.

The radical shift that Appellee seeks would risk removing critical protections against discrimination from a significant portion of Washingtonian employees. The shift would, for example, risk denying these protections to employees in nearly 50% of the hospitals across the state—and up to 100% of the hospitals in certain counties. *See* Clarridge, *supra* (finding that 45% of Washington's hospital beds are run by religious healthcare systems, including 100% of hospital beds in Whatcom, Stevens, San Juan, and Cowlitz counties, and that Washington has the second-highest percentage of hospital beds in Catholic institutions out of all fifty states).

And the reach could extend even further. First, the district court's reasoning could apply to all the employees who work for secular businesses whose owners have religious objections to complying with the WLAD. Those secular employers— not just religious organizations—might be able to assert free exercise claims and argue that the WLAD is not neutral and generally applicable. *Cf. Burwell v. Hobby*

15

*Lobby Stores, Inc.*, 573 U.S. 682 (2014). Second, because exclusions for small employers are commonplace in many different workplace laws and regulations (as discussed above), the reasoning employed by the district court here would mean that all those laws are subject to—and fail—strict scrutiny too. These risks would run to employees in Washington, as well as in Arizona, California, and Idaho. *See* Ariz. Rev. Stat. Ann. § 41-1461(7)(a) (2023) (exempting employers with fewer than fifteen employees); Cal. Gov't Code § 12926(d) (West 2023) (same re employers with fewer than five employees); Idaho Code Ann. § 67-5902(6) (West 2023) (same).

By the district court's logic here, even the ordinance at issue in *Smith*—which prohibited the use of peyote—would fail a neutrality-and-general-applicability test because the prohibition had a medical exemption. *San Diego*, 19 F.4th at 1178 (citing *Smith* for the proposition that "state law prohibiting possession of a controlled substance, but containing exception for substances prescribed by a medical practitioner, was generally applicable").

Indeed, it is difficult to think of any law that does not have any exception whatsoever. For instance, trespass laws in property have exceptions—for adverse possession, necessity, etc. The duty to testify when subpoenaed has exceptions—for spousal privileges, doctor-patient communications, attorney-client privileges, trade secrets, and so on. State assault weapons bans generally exempt law enforcement

16

officers, military personnel, and those who obtained the weapon lawfully before the ban took effect. *See, e.g.*, Mass. Gen. Laws ch. 140, § 131M (2023); N.Y. Penal Law § 265.00 (McKinney 2023). Federal and state tax codes, health and safety codes, and labor codes are similarly rife with exceptions. Indeed, some well-known statutes are mostly comprised of exemptions, and simply contain a single broad operative section. *See, e.g.*, 17 U.S.C. §§ 106, 107–122 (Copyright Act, featuring a single operative section followed by more than fifteen sections of exceptions); 33 U.S.C. §§ 1251–1387, 1311(a) (Clean Water Act following a similar structure); *see generally* Eugene Volokh, *My Argument for Preserving Employment Division v. Smith*, Reason.com (May 26, 2020, 11:53 AM), https://perma.cc/RRB5-ZBY4 (discussing these and other secular exemptions).

Even more concerningly, sanctioning the district court's reasoning would not only automatically *trigger* strict scrutiny for laws with these exemptions, but it would also set up these laws to automatically *fail* strict scrutiny because of their underinclusiveness. The district court's opinion here is proof of this threat. Not only did it hold that the WLAD "likely is not neutral and generally applicable" because of its small-employer exemption, but it further held that the "WLAD likely is also impermissibly underinclusive" and thus "likely fails to satisfy strict scrutiny" because, again, it "exempts employers with less than eight employees." 1-ER-010, 013.

17

That regime of presumptive unconstitutionality is exactly the result that *Smith* sought to avoid:

> Precisely because 'we are a cosmopolitan nation made up of people of almost every conceivable religious preference,' and precisely because we value and protect that religious divergence, we cannot afford the luxury of deeming *presumptively invalid,* as applied to the religious objector, every regulation of conduct that does not protect an interest of the highest order. The rule respondents favor would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind . . . .

*Smith*, 494 U.S. at 888 (quoting *Braunfeld v. Brown*, 366 U.S. 599, 606 (1961)). The decision below cannot be reconciled with these principles. The decision misapplies the standard for general applicability and threatens to subject to strict scrutiny—and then strike down—a vast number of government regulations, across nearly all areas of law. This Court should reverse.

## CONCLUSION

For the reasons above, the district court's preliminary injunction order should be reversed.

Date:  January 6, 2025

Respectfully submitted,

/s/Joshua Block

Adrien Leavitt
La Rond Baker
ACLU OF WASHINGTON
  FOUNDATION
P.O. Box 2728
Seattle, Washington 98111
Tel: (206) 624-2184
aleavitt@aclu-wa.org

Joshua Block
  *Counsel of Record*
Louise Melling
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

18

baker@aclu-wa.org

Alex Luchenitser
Jenny Samuels
AMERICANS UNITED FOR
  SEPARATION OF CHURCH AND
  STATE
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 466-7308
luchenitser@au.org
samuels@au.org

jblock@aclu.org
lmelling@aclu.org

Aditi Fruitwala
Daniel Mach
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
915 15th St. NW, 6th Floor
Washington, DC 20005
Tel: (212) 549-2100
afruitwala@aclu.org
dmach@aclu.org

*Counsel for Amici Curiae*

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-7246

I am the attorney or self-represented party.

**This brief contains** 4,433 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Joshua Block     **Date** January 6, 2035

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                         *Rev. 12/01/22*