No. 24-7246

---

**In the United States Court of Appeals for the Ninth Circuit**

---

UNION GOSPEL MISSION OF YAKIMA, WASHINGTON,

Plaintiff-Appellee,

v.

ROBERT FERGUSON, et al,

Defendant-Appellant.

---

Appeal from the United States District Court

for the Eastern District of Washington

Case No. 1:23-cv-03027-MKD

---

**AMICUS BRIEF OF NATIONAL RELIGIOUS BROADCASTERS IN**

**SUPPORT OF PLAINTIFF-APPELLEE**

---

MICHAEL P. FARRIS
NATIONAL RELIGIOUS BROADCASTERS
20 F. Street
Seventh Floor
Washington D.C. 20001
(202) 341-4783
*mfarris@nrb.org*
Attorney for *Amicus Curiae*

## Disclosure Statement

National Religious Broadcasters is a nonprofit corporation. It has no parent

corporation, nor does it have any stockholders whatsoever.

## Consent to file this brief

All parties have consented to the filing of this amicus brief by National Religious
Broadcasters.

## Statement of Authorship

Pursuant to Fed. R. App. P. 29(a)(4)(E), counsel for Amicus affirms that no counsel
for any party authored this brief in whole or in part, no party and no party's counsel
contributed any money for the preparation or submission of this brief, and no
person or entity other than National Religious Broadcasters and its counsel
contributed any money for the preparation or submission of this brief.

# **Table of Contents**

Disclosure Statement.................................................................. i

Consent to file this brief............................................................. i

Statement of Authorship ............................................................ i

Table of Authorities.................................................................. iii

Interest of Amicus .....................................................................1

Introduction ...............................................................................1

Argument....................................................................................4

   I. The Freedom of Expressive Association Includes the Freedom to Not Associate. ................................................................................4

    II. The Clear Standards of *Dale* Prohibit the State from Forcing The Mission to Hire Persons Who Reject its Beliefs and Mission .......................................6

     III. There is No Employment Exception to the Law of Expressive Association.....................................................................9

Conclusion ...............................................................................17

Form 8. Certificate of Compliance for Briefs...........................19

## Table of Authorities

**Cases**

*Boy Scouts of Am. v. Dale,* 530 U.S. 640 (2000) ............................................. passim

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ........................................ 13, 14, 16

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012) ....................................................................................................15

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995)..13

*IDK, Inc. v. Clark Cnty*., 836 F.2d 1185 (9th Cir. 1988)......................................13

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31, 585 U.S.* 878 (2018) ..........................................................................................................................4

*Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012) ............... 5, 6, 7

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958)....................................................................................4

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020)................17

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376 (1973)..15

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ..........................................................4

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc*., 547 U.S. 47 (2006) ..........15

*Ry. Mail Ass'n v. Corsi*, 326 U.S. 88 (1945) ...........................................................15

*Santopietro v. Howell*, 73 F.4th 1016 (9th Cir. 2023) ...............................................4

*Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) .....................................................16

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)....................................................15

*Sullivan v. Univ. of Washington*, 60 F.4th 574 (9th Cir. 2023)..................................6

*Wisconsin v. Mitchell,* 508 U.S. 476 (1993).............................................................15

**Statutes**

Alaska Stat. § 18.80.300(5)......................................................................................10

Ariz. Rev. Stat. § 41-1462........................................................................................10

Cal. Gov. Code § 12926(d) ......................................................................................10

Colo. Rev. Stat. § 24-34-402(6)...............................................................................10

Conn. Gen. Stat. § 46a-81p......................................................................................11

Del. Code Ann. Tit. 19, § 710(7).............................................................................10

Fla. Stat. § 760.10(9)................................................................................................11

Haw. Rev. Stat. § 378-3(5).......................................................................................11

775 Ill. Comp. Stat. 5/2 101(B)(2)..........................................................................10

Iowa Code § 216.6(6)(d)..........................................................................................10

Kan. Stat. § 44 1002(b) & (i) ...................................................................................10

Ky. Rev. Stat. § 344.090(1) & (2) ........................................................... 11

Mass. Gen. Laws ch. 151B, §4(18) ......................................................... 10

Md. Code, State Gov. § 20-605(a)(1) ....................................................... 11

5 Me. Stat. § 4553(4) ............................................................................ 10

Mich. Comp. Laws § 37.2208 ................................................................ 11

Minn. Stat. § 363A.20 ........................................................................... 11

N. H. Rev. Stat. § 354 A:18 ................................................................... 11

N.D. Cent. Code § 14-02.4 08 ............................................................... 11

N.J. Rev. Stat. § 10:5-12(a) ................................................................... 11

N.M. Stat. Ann. § 28-1 9(B) .................................................................. 10

N.Y. Exec. Law § 296(11) ..................................................................... 11

Neb. Rev. St. § 48-1103(1) .................................................................... 11

Nev. Rev. Stat. § 613.320(1)(b) ............................................................. 10

Ohio Rev. Code Ann. § 4112.02(O) ....................................................... 11

Or. Rev. Stat. § 659A.006(5)(c) ............................................................. 11

43 Pa. Cons. Stat. § 955(10) .................................................................. 11

R.I. Gen.Laws § 28-5-6(8)(ii) ................................................................ 10

Tex. Labor Code § 21.109 ...................................................................... 10

Utah Code § 34A-5-102(1)(ii) ................................................................ 10

Va. Code Ann. § 2.2-3905(E) ................................................................. 10

Vt. Stat. Ann. 21, § 495(e) ..................................................................... 11

Wis. Stat. § 111.337(2)(am) ................................................................... 11

## Other Authorities

Opening Brief of Appellants .......................................................... 12, 16

**Interest of Amicus**

National Religious Broadcasters (NRB) is a non-partisan association of Christian broadcasters united by their shared purpose of proclaiming Christian teaching and promoting biblical truths. NRB's 1,487 members reach a weekly audience of approximately 141 million American listeners, viewers, and readers through radio, television, the Internet, and other media.

Since its founding in 1944, NRB has worked to foster excellence, integrity, and accountability in its membership. NRB also works to promote its members' use of all forms of communication to ensure that they may broadcast their messages of hope through First Amendment guarantees. NRB believes that religious liberty and freedom of speech together form the cornerstone of a free society.

NRB contends that all organizations engaged in expressive association should have the freedom to hire all employees based on fidelity to the vision and values of the organization. Religious organizations in particular rely on the freedom to employ only persons who share the common faith and who are willing to live that faith in their daily lives.

**Introduction**

All nonprofit organizations that have an established set of values and a clear vision of their goals in society seek to hire only those individuals that are fully

1

aligned with the beliefs, vision, and values of the organization. For example, the ACLU tells job applicants that they should "be committed to advancing the mission of the ACLU."[1] Planned Parenthood informs job applicants that they must have a "deep commitment to Planned Parenthood's mission of promoting Sexual and Reproductive Health."[2]

Similar requirements are found in job descriptions for other advocacy organizations.

- PETA (Media Buyer): "Adherence to a healthy vegan lifestyle." "Support for PETA's philosophy and the ability to professionally advocate PETA's positions on issues in a professional manner." "Commitment to the objectives of the organization."[3]
- Americans United for Separation of Church and State (Constitutional litigation internship): "Law students (any year) who are committed to advancing the public interest and the separation of religion and government are encouraged to apply."[4]

Some advocacy organizations explicitly describe the importance of philosophical cohesion of every employee in order to advance its mission.

Human Rights Campaign

We value the transformative impact of collaboration. By working together, fostering open communication, furthering understanding, and building caring and supportive environments, we can achieve something bigger than we could alone.[5]

---

[1] https://www.aclu.org/careers/apply/?job=7823627002&type=national
[2] https://jobs.lever.co/ppfa/8ad40088-9e65-4e7b-89be-a77df7226b5e
[3] https://www.peta.org/about-peta/work-at-peta/search-jobs-peta/
[4] https://www.au.org/about-au/careers-fellowships-internships/
[5] https://www.hrc.org/about/values

Planned Parenthood

Be part of the diverse Planned Parenthood family. Work hand in hand with like-minded individuals in an environment built on collaboration, open communication, and mutual respect. We're looking for passionate, dedicated people who are eager to make positive contributions to their community and to our mission.[6]

It should be self-evident that all these organizations have the unquestionable constitutional right to define their own missions, expound their own beliefs, and to hire only those candidates who share their mission and beliefs.

The question before this Court is whether religious organizations in Washington State will be guaranteed the same constitutional protection to define their own missions, expound their own beliefs, and to hire only those candidates who share their own missions and beliefs.

While your amicus concurs with each of the arguments advanced by the Union Gospel Mission (hereafter "the Mission"), this brief deals exclusively with the issue of expressive association.

---

[6] https://www.plannedparenthood.org/get-involved/jobs-and-volunteering

3

## Argument

## I. The Freedom of Expressive Association Includes the Freedom to Not Associate.

The freedom of association is not enumerated as such in the text of the First Amendment, but it is derived from "the close nexus between the freedoms of speech and assembly*." Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). It is well settled that the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." The Supreme Court has made it clear that "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.* at 460-61.

This aspect of freedom of association has become known as "expressive association" and "it extends … only to associations engaged in expressive activity that could be impaired by government action." *Santopietro v. Howell*, 73 F.4th 1016, 1025 (9th Cir. 2023) (cleaned up). It is well-established that the freedom of expressive association also "presupposes a freedom *not* to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623, (1984) (emphasis added); See also, *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31, 585 U.S. 878, 892* (2018) ("The

4

right to eschew association for expressive purposes is likewise protected.").
Government may not violate this protection unless it demonstrates that its policy
serves a "compelling state interest that cannot be achieved through means
significantly less restrictive of associational freedoms." *Knox v. Serv. Emps. Int'l
Union, Local 1000*, 567 U.S. 298, 310 (2012) (cleaned up).

There is no reasonable basis for questioning the fact that the Mission is the
kind of organization engaged in expressive association. Through a time-honored
and generous program of charitable relief to the poor and homeless, the Mission
seeks to communicate the love of Christ and the truth of the Christian faith in a
noble and unmistakable fashion. It would likewise seem self-evident that the
*freedom not to associate* is plainly violated by efforts of the Attorney General to
force the Mission to hire people who do not share its Christian views and mission.

*Boy Scouts of Am. v. Dale,* 530 U.S. 640 (2000) is the seminal and
controlling case upholding the freedom to not associate. *Dale* considered the
freedom of expressive association in the context of an anti-discrimination claim
brought by an LGBT individual.

## II. The Clear Standards of *Dale* Prohibit the State from Forcing The Mission to Hire Persons Who Reject its Beliefs and Mission

The proper first step for every expressive association case is to determine "whether the group engages in 'expressive association.'" *Dale*, 530 U.S. at 648. To qualify "a group must engage in some form of expression, whether it be public or private." *Id.* Just in 2023, this Court gave a full exposition of the kind of organizations that qualify to raise the right of expressive association.

> Individuals engage in expressive association when they join with others to pursue "a wide variety of political, religious, cultural, or social purposes," *Jaycees*, 468 U.S. at 630, including the advocacy of both public and private points of view, the advancement of beliefs and ideas, and the transmission of "a system of values." *Boy Scouts of Am.*, 530 U.S. at 650. Members involved in such endeavors are generally protected in expressing the "views that brought them together."
>
> *Sullivan v. Univ. of Washington*, 60 F.4th 574, 579 (9th Cir. 2023).

The Mission is clearly engaged in the "advocacy of points of view" and "the advancement of beliefs and ideas" and the "transmission of a system of values." It seeks to communicate the truth of the Gospel of Jesus Christ as well as the love of God for all through both spoken messages and numerous acts of love and benevolence. There can be no doubt that the Mission is entitled to raise the protection of the right of expressive associational freedom.

The second phase of analysis requires a court to determine "whether the forced inclusion of" nonbelievers "would significantly affect" the Mission's "ability to advocate public or private viewpoints." *Dale* at 650. See also, *Knox v.*

*Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 309 (2012). "[T]he ability of like-minded individuals to associate for the purpose of expressing commonly held views may not be curtailed."

Just as Planned Parenthood and the Human Rights Campaign's job postings reveal their reliance on the importance of the whole team believing in the mission of the organization, so too the Mission is entitled to expect that every person working at the Mission is committed to the idea of reaching the poor and homeless not just with food, shelter, and assistance, but with the love of Christ.

The Mission's central premise is that nonbelieving employees cannot be relied upon to deliver the truth of the Gospel and the love of God. It is plainly apparent that those who do not embrace such truths cannot deliver these central beliefs to others. After all, the very name of the right is *expressive association.* The right to hang out in a group is not protected. What is protected is "the ability of like-minded individuals to associate for the purpose of expressing commonly held views." *Knox, supra.*

In *Dale,* the Supreme Court analyzed expressive association with a focus on *message.* "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a

significant way the group's ability to advocate public or private viewpoints." *Dale*, 530 U.S. at 648.

It would be an error to focus on *mission* rather than *message* as was done by the New Jersey Supreme Court in *Dale*, an approach that was explicitly rejected by the Supreme Court of the United States. The New Jersey court held that the Boy Scouts did not associate for the "purpose of disseminating the belief that homosexuality is immoral." *Id.* at 644. The Supreme Court rejected this view, saying: "associations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment. An association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* at 655.

Another aspect of the holding in *Dale* merits special emphasis. The Supreme Court followed the principle that organizations, not courts, determine their beliefs, messages, and missions. "The Boy Scouts …assert that it 'does not want to promote homosexual conduct as a legitimate form of behavior…We accept the Boy Scouts' assertion." *Dale, supra* at 651. "As we give deference to an association's assertions regarding the nature of its expression, we must also give deference to an association's view of what would impair its expression." *Id* at 653.

8

Thus, the general principles governing freedom of expressive association claims are clearly established. First, it must be demonstrated that the group is engaged in expressive association—that is advocacy of points of view, the advancement of beliefs and ideas, or transmission of a system of values. Second, the forced inclusion of those who do not agree with the organization's message must be shown to affect the ability of the organization to transmit its desired message. As a subset of this second point, the Court in *Dale* emphasized that courts should give deference to the organization's assessment of what or who would interfere with its ability to communicate its message.

With these principles in mind, we turn to the arguments raised by the State of Washington regarding expressive association.

## III. There is No Employment Exception to the Law of Expressive Association

The overarching theme of the State's argument is that there is scant precedent supporting the right of expressive association in the employment context. There's a reason for this comparative paucity that has nothing to do with the lack of a robust set of established constitutional principles. Washington State is an outlier in its refusal to protect the autonomy of religious organizations in the employment context.

9

According to the Movement Advancement Project,[7] there are twenty-three states that have laws that explicitly prohibit discrimination in employment on the basis of sexual orientation and gender identity.[8] In ten additional states, the state law banning discrimination on the basis of sex has been interpreted, most often by administrative agencies, to include discrimination on the basis of sexual orientation or gender identity.[9] In one state, Wisconsin, the law only addresses sexual orientation and not gender identity.[10] In sixteen states, there are no explicit prohibitions concerning discrimination on the basis of sexual orientation or gender identity.[11]

In all thirty-four of the above-listed states, there is an exemption for religious employers. In sixteen of these states, the religious exemption is categorical—religious organizations are not covered employers.[12] In twelve of

---

[7] https://www.lgbtmap.org/img/maps/citations-nondisc-employment.pdf

[8] *Id.* at 3.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.*

[12] Alaska (Alaska Stat. § 18.80.300(5)), Arizona (Ariz. Rev. Stat. § 41-1462), California (Cal. Gov. Code § 12926(d)), Colorado (Colo. Rev. Stat. § 24-34-402(6)), Delaware (Del. Code Ann. Tit. 19, § 710(7)), Illinois (775 Ill. Comp. Stat. 5/2 101(B)(2)), Iowa (Iowa Code § 216.6(6)(d)), Kansas (Kan. Stat. § 44 1002(b) & (i)), Maine (5 Me. Stat. § 4553(4)), Massachusetts (Mass. Gen. Laws ch. 151B, §4(18)), Nevada (Nev. Rev. Stat. § 613.320(1)(b)), New Mexico (N.M. Stat. Ann. § 28-1 9(B)), Rhode Island (R.I. Gen.Laws § 28-5-6(8)(ii)), Texas (Tex. Labor Code § 21.109), Utah (Utah Code § 34A-5-102(1)(ii)), Virginia (Va. Code Ann. § 2.2-3905(E)).

these states, religious organizations are permitted to limit their hiring to only those who share their faith.[13] In four states, employers are allowed to limit their hiring to only those who share their faith provided that it is a bona fide occupational qualification.[14] Connecticut's religious exemption is idiosyncratic but very broad.[15] And then, there is Washington State, which uniquely limits its religious exemptions to those who qualify as "ministers."

The chief reason there is a comparative lack of litigation in this arena is because of the otherwise universal practice of coupling sexual orientation/gender identity protections with statutory exemptions for religious organizations.

This does not mean that there are not guiding, even binding, cases which illustrate the proper resolution of the case at bar. But the arguments and cases advanced by the State of Washington do not illumine the correct path.

The State's framing of the Mission's claims is so twisted and truncated as to rob it of any claim of accuracy.

---

[13] Florida (Fla. Stat. § 760.10(9)), Hawaii (Haw. Rev. Stat. § 378-3(5)), Kentucky (Ky. Rev. Stat. § 344.090(1) & (2)), Nebraska (Neb. Rev. St. § 48-1103(1)), New Hampshire (N. H. Rev. Stat. § 354 A:18), New Jersey (N.J. Rev. Stat. § 10:5-12(a)), New York (N.Y. Exec. Law § 296(11)), Ohio (Ohio Rev. Code Ann. § 4112.02(O)), Oregon (Or. Rev. Stat. § 659A.006(5)(c)), Pennsylvania (43 Pa. Cons. Stat. § 955(10)), Vermont (Vt. Stat. Ann. 21, § 495(e)), Wisconsin (Wis. Stat. § 111.337(2)(am)).

[14] Maryland (Md. Code, State Gov. § 20-605(a)(1)), Michigan (Mich. Comp. Laws § 37.2208), Minnesota (Minn. Stat. § 363A.20), North Dakota (N.D. Cent. Code § 14-02.4 08).

[15] Connecticut (Conn. Gen. Stat. § 46a-81p).

11

UGM asserts a broader associational right—a right that is "enjoyed by religious and secular groups alike," whether the association is "the Lutheran Church, a labor union, or a social club." *Hosanna-Tabor*, 565 U.S. at 189. UGM's theory is that any expressive purpose, such as not wishing to associate with LGBTQ+ people or any other group of people, would suffice.[16]

The facts of the case make it very clear that the Mission serves all people—period. This means that the Mission serves LGBT persons willingly, sacrificially, and lovingly. To portray the facts and the claims of the Mission as not being willing to associate with LGBT+ people is a blatant mischaracterization. The legal claim of the Mission is that they wish to only hire persons who share their religious faith in both professed beliefs and lifestyles. The Mission wants a staff that believes and lives their faith in an authentic manner. And, yes, this means that persons engaged in sexual relations outside of a monogamous marriage between a man and a woman are not eligible for employment. But it also means that atheists, agnostics, Buddhists, and Muslims—along with any other person who does not share the statement of faith of the Mission—are ineligible for employment.

However, it is clear that the Mission will serve all such persons who need or desire their charitable services. To characterize this approach to ministry as being unwilling to associate with a particular group is patently disingenuous.

---

[16] Opening Brief of Appellants, p. 42-43.

Moreover, the legal claim made by the Mission is also mischaracterized by stating only a portion of the legal theory. It is true that the Mission's expressive association claim could be made by any type of association be it Lutheran Church, labor union, or social club. But it is also true that this Court has acknowledged that these kinds of associations can indeed bring valid expressive association claims. "A couple out on the town is not an overtly expressive association when compared to political parties, civil rights organizations, publishers, churches, lobbyists, labor unions, and other special interest groups." *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1195 (9th Cir. 1988).[17] But such organizations can bring claims only when engaged in expression, and only when the government interferes in the message that they wish to convey.

The core of the State's argument is that expressive association claims are not valid in the employment context, at least vis-à-vis of anti-discrimination claims. The State contends that *Hishon v. King & Spalding*, 467 U.S. 69 (1984) announced a categorical rule that expressive association claims are never valid in employment cases. The Supreme Court said no such thing.

---

[17] Even though this Court's list of entities who may make plausible expressive association claims did not include social clubs, the Supreme Court made it very clear that such clubs may indeed be protected. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995).

The entire discussion of the expressive association issue in *Hishon* is one paragraph long. *Id.* at 78. This short discussion clearly follows the normal rules for all expressive association cases. The organization seeking to enforce its right to exclude others must demonstrate that it has a message, and that it would be impaired if the group was forced to include the unwanted individual.

The King & Spalding firm sought to demonstrate that it was the kind of group that could claim the right of expressive association because "lawyers may make a distinctive contribution to the ideas and beliefs of our society." But the Court speedily rejected this claim by pointing out that King & Spalding failed to show "how its ability to fulfill such a function would be inhibited by a requirement that it consider petitioner for partnership." *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (cleaned up).

King & Spalding did little more than claimed the right to hang out with the people they desired. The right claimed by the Mission is not the right of association but the right of *expressive* association. The law firm did not make, and almost certainly could not make, any showing that this firm had particular views on topics that it could not advance if Ms. Hishon became a partner in the firm.

It is important to emphasize that the Supreme Court did not say that employers cannot make expressive association claims. In fact, its treatment of the

issue reaches the exact opposite conclusion. It considered the claim and rejected it, not because King & Spaulding was an employer, but because it failed to demonstrate any interference with any message that it wished to convey.

In fact, the Supreme Court has made it clear that employers can make such claims.

> According to the EEOC and Perich, religious organizations could successfully defend against employment discrimination claims in those circumstances by invoking the constitutional right to freedom of association—a right "implicit" in the First Amendment.

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 189 (2012).

The State also relies, albeit in a limited manner, on *Wisconsin v. Mitchell,* 508 U.S. 476 (1993). That reliance seems misplaced, if not baffling, since the holding in that case is that physical assaults are not expressive conduct protected by the First Amendment. *Id.* at 484. The State also cites *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 92 (1945) to bolster its expressive association claims. *Corsi* merely holds that a union that represents government workers can be prohibited from discriminating on the basis of race. This is not an expressive association claim. There was no claim of an impaired message. *Corsi* is both unremarkable and inapplicable to the present controversy. The State also cites *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376 (1973); *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc*., 547 U.S. 47 (2006); and *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) for the proposition that discrimination in employment is

illegal and may be prohibited. No one disputes this general principle. None of these cases addressed an expressive association claim by an employer, so they are simply irrelevant to the issues before this Court.

The one case that is clearly parallel to this case arose in the Second Circuit. Noting that this case was out-of-circuit precedent and thus not binding, the State sought to discredit the Second Circuit's recent decision of *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023), which upheld an employer's claim to the right of expressive association in a nondiscrimination context. "Slattery did not consider the Supreme Court's rejection of a free association right to discriminate in employment as reflected in *Hishon* and similar cases, or the distinction between private and public organizations."[18]

The reason that the Second Circuit didn't "consider" *Hishon* arises from the self-evident fact that the panel read this decision of the Supreme Court correctly. *Hishon* created no categorical rule rejecting expressive association in employment cases; it simply applied the normal rules to reject the law firm's claim based on the facts. The Second Circuit need not catalog every Supreme Court expressive association case decided on factual grounds. The holding and discussion of the Second Circuit indeed is applicable and instructive for this Court's consideration.

---

[18] Opening Brief of Appellants, p. 47.

Few employers can make a successful expressive association claim. But even fewer states would even attempt to claim that a religious organization cannot limit their hiring to those who share its faith.

What is remarkable here is not that the Mission seeks to hire those capable of sharing the Gospel with both words and tangible assistance to help all people in need, but that the State of Washington thinks it has the power to override the choices of a religious organization.

Although stated in the context of a religious school and not a rescue mission, the broad protections applicable for religious organizations in an employment context have been strongly and repeatedly endorsed. A recent example is sufficient for our present purpose.

> When a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow.

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 762 (2020).

The State of Washington's effort to prevent the Union Gospel Mission from hiring staff capable of ministering to the homeless and needy with the life-giving message of the Gospel of Jesus Christ threatens religious independence in a way the First Amendment does not allow.

## Conclusion

For the foregoing reasons, the decision below should be affirmed.

Respectfully submitted,

MICHAEL P. FARRIS
NATIONAL RELIGIOUS BROADCASTERS
20 F. Street
Seventh Floor
Washington D.C. 20001
(202) 341-4783
*mfarris@nrb.org*
Attorney for *Amicus Curiae*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No. 24-7246

I am the attorney or self-represented party.

**This brief contains 3,869**, including 0 words manually counted in any visual

images, and excluding the items exempted by FRAP 32(f). The brief's type size and

typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/[Michael P. Farris] **Date** 2-3-2025

*(use "s/[typed name]" to sign electronically-filed documents)*

19