No. 24-7246
**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

UNION GOSPEL MISSION OF YAKIMA, WASHINGTON,

*Plaintiff-Appellee*,

v.

ROBERT FERGUSON, in his official capacity as Attorney General of
Washington, ANDRETA ARMSTRONG, in her official capacity as
Executive Director of the Washington State Human Rights
Commission; and GUADALUPE GAMBOA, HAN TRAN, JEFF
SBAIH, LUC JASMIN, and CHELSEA DIMAS, in their official
capacities as Commissioners of the Washington State Human Rights
Commission,

*Defendants-Appellants*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON AT YAKIMA
Case No. 1:23-cv-3027-MKD

---

**AMICUS CURIAE BRIEF OF
AMERICAN ASSOCIATION OF CHRISTIAN SCHOOLS,
ASSOCIATION FOR BIBLICAL HIGHER EDUCATION,
ASSOCIATION OF CHRISTIAN SCHOOLS INTERNATIONAL, AND
ASSOCIATION OF CLASSICAL CHRISTIAN SCHOOLS IN SUPPORT
OF PLAINITFF-APPELLEE AND AFFIRMANCE**

---

George M. Ahrend
Ahrend Law Firm PLLC
421 W. Riverside Ave., Ste. 1060
Spokane, WA 99201
(509) 467-6090
george@luveralawfirm.com
*Counsel for Amici Curiae*
American Association of Christian Schools,
Association for Biblical Higher Education,
Association of Christian Schools International,
and Association of Classical Christian Schools

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), the amici curiae submitting this brief are religious nonprofit organizations. They do not have parent corporations and no publicly held corporation has an ownership interest in any of them.

Date: February 3, 2025

> */s/ George M. Ahrend*
> George M. Ahrend
> Ahrend Law Firm PLLC
> *Counsel for Amici Curiae*
> American Association of Christian Schools,
> Association for Biblical Higher Education,
> Association of Christian Schools
> International, and Association of Classical
> Christian Schools

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ..................................................................... ii

IDENTIFY AND INTEREST OF AMICI CURIAE.................................................1

AUTHORITY TO FILE ..........................................................................3

ARGUMENT .......................................................................................3

I.    The WLAD is neither neutral nor generally applicable because it exempts small employers while denying an exemption for nonprofit religious organizations, in the absence of any reason to believe that small employers are less likely to engage in prohibited discrimination................................7

II.    The WLAD's exemption of small employers establishes that there is no compelling interest in denying the same exemption to nonprofit religious organizations............................................................................11

CONCLUSION ..................................................................................12

CERTIFICATE OF SERVICE ................................................................13

CERTIFICATE OF COMPLIANCE .........................................................14

# TABLE OF AUTHORITIES

**Cases** *Page*

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
    508 U.S. 520 (1993) ....................................................... 7-9, 11

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ........................................................ 11-12

*Griffin v. Eller,*
    130 Wash. 2d 58, 922 P.2d 788 (1996)....................................... 4, 9-10

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,*
    565 U.S. 171 (2012) .............................................................4

*Kumar v. Gate Gourmet*,
    180 Wash. 2d 481, 325 P.3d 193 (2014)............................................ 5

*Our Lady of Guadalupe School v. Morrissey-Berru,*
    591 U.S. 732 (2020) ............................................................. 4

*Palmer v. Laberee,*
    23 Wash. 409, 63 P. 216, 218 (1900).............................................. 4

*Roberts v. Dudley*,
    140 Wash. 2d 58, 993 P.2d 901 (2000)............................................. 6

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) ........................................................ 8, 11

*Seattle Pacific Univ. v. Ferguson*,
    104 F.4th 50 (9th Cir. 2024)................................................... 7-8

*South Bay United Pentecostal Church v. Newsom*,
    — U.S. —, 141 S. Ct. 716 (2021) ............................................. 8-9

*Suarez v. State*,
    3 Wash. 3d 404, 552 P.3d 786 (2024)............................................. 5

*Tandon v. Newsom*,
593 U.S. 61 (2021) ........................................................................ 8-10

*Union Gospel Mission of Yakima v. Ferguson*,
2024 WL 4660918 (E.D. Wash. Nov. 1, 2024) ................................ 6

*White v. State*,
131 Wn.2d 1, 929 P.2d 396 (1997) .................................................. 6

*Woods v. Seattle's Union Gospel Mission,*
197 Wash. 2d 231, 481 P.3d 1060 (2021), *cert. denied,*
— U.S. —, 142 S. Ct. 1094 (2022) .............................................. 4-5, 7

## Statutes, Rules & Regulations

1949 Wash. Laws, ch. 183, § 3(b) ........................................................4

Fed. R. App. P. 29(a)(2) ......................................................................3

Fed. R. App. P. 29(a)(4)(E) ................................................................3

Wash. Admin. Code, ch. 162-08 ..........................................................6

Washington Constitution, Art. I, § 12 ..................................................4

Wash. Rev. Code § 49.60.030(2)..........................................................6

Wash. Rev. Code § 49.60.040(11) .......................................................3

Wash. Rev. Code §§ 49.60.010, .030(1)(a) & .180........................................9

Wash. Rev. Code §§ 49.60.120(4), .140, .150, .160 & .170 ........................6

## IDENTITY AND INTEREST OF AMICI CURIAE

The American Association of Christian Schools ("AACS"), the Association for Biblical Higher Education in Canada and the United States ("ABHE"), the Association of Classical Christian Schools ("ACCS"), the Association of Christian Schools International ("ACSI"), and their member organizations and schools operate according to statements of religious belief and codes of personal conduct, which are essential to maintain their religious identity and fulfill their religious functions. These organizations and their member schools seek to uphold the highest standards of academic excellence and integrate the Christian faith with academic study. They rely on administrators, faculty, and staff who will not just impart information about Christianity, but who will also model the practice of the faith and mentor students as they develop their own faith and incorporate Christian beliefs and morality into their own lives. In this way, AACS, ABHE, ACCS, and ACSI view education as integral to Christian discipleship and fulfilling the Great Commission. *See* Matt. 28:18-20.

AACS, founded in 1972, is a nonprofit federation of 38 state and regional Christian school organizations, representing nearly 700 primary and secondary schools, which enroll over 115,000 students. AACS provides educational programs and services to its constituent schools, including teacher certification, school improvement, and accreditation, all of which are designed to integrate the Christian faith and life with learning and educate young people to live as good citizens

1

according to the principles of their faith. AACS accreditation is widely recognized by state approving agencies and the U.S. Department of Homeland Security for the Student Exchange Visitor Program.

ABHE, founded in 1947, is a nonprofit network of over 155 institutions of higher education, throughout North America, which enroll more than 72,000 students. ABHE supports academically rigorous education that challenges students to develop critical thinking skills, a biblically grounded Christian worldview, and a manner of living consistent with that worldview. ABHE also provides accreditation of undergraduate and graduate educational programs and has been recognized by the U.S. Department of Education as a postsecondary accrediting agency since 1952.

ACCS, founded in 1994, is a nonprofit organization of over 500 classical Christian schools located throughout the United States. ACCS assists its member schools in providing a classical education in light of a Christian worldview that cultivates a Christian way of life. ACCS also accredits member schools that meet its educational requirements, certifies teachers and administrators, recognizes diplomas, and endorses training and curriculum.

ACSI is a nonprofit association providing support services to 24,000 Christian schools in over 100 countries. ACSI directly serves over 5,500 member schools worldwide, including 2,500 Christian preschools, elementary, secondary schools, and post-secondary institutions in the United States; and over 3,000 Christian global

schools. Member-schools educate some 5.5 million children around the world. ACSI accredits Protestant pre-K through grade 12 schools, provides professional development and teacher certification, and offers member-schools high-quality curricula, student testing and a wide range of student activities. ACSI members advance the common good by providing quality education and spiritual formation to their students. This mission relies upon a vibrant Christian faith that embraces every aspect of life.

Pursuant to Fed. R. App. P. 29(a)(4)(E), no party's counsel authored this brief in whole or in part, no party or a party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person other than amici curiae, its members or its counsel contributed money that was intended to fund preparing or submitting this brief.

## AUTHORITY TO FILE

Pursuant to Fed. R. App. P. 29(a)(2), the parties have consented to the filing of this amicus curiae brief.

## ARGUMENT

The Washington Legislature has exempted both nonprofit religious organizations and small employers who employ fewer than eight persons from employment discrimination claims under the Washington Law Against Discrimination ("WLAD"). Wash. Rev. Code § 49.60.040(11). These statutory

exemptions were included in the WLAD when it was first adopted in 1949 and have never been removed by the legislature. 1949 Wash. Laws, ch. 183, § 3(b).

In the context of a sex discrimination claim, the Washington Supreme Court upheld the exemption of small employers against a challenge under the privileges and immunities clause of the Washington Constitution, Art. I, § 12. *Griffin v. Eller,* 130 Wash. 2d 58, 70, 922 P.2d 788, 793 (1996). However, in the context of a more recent religious discrimination claim, the Court struck down the exemption of nonprofit religious organizations under the same provision of the state constitution, as applied to all employees except those who could qualify for the "ministerial exemption"[1] required by the First Amendment to the U.S. Constitution. *Woods v. Seattle's Union Gospel Mission,* 197 Wash. 2d 231, 252, 481 P.3d 1060, 1070 (2021), *cert. denied*, — U.S. —, 142 S. Ct. 1094 (2022). The effect of the decision in *Woods* is to eliminate the legislative exemption for nonprofit religious organizations in the WLAD with respect to employees who do not qualify as "ministers," as if the exemption had never been enacted. *Palmer v. Laberee,* 23 Wash. 409, 416-17, 63 P. 216, 218 (1900).

Following the Washington Supreme Court's decision in *Woods*, small employers remain exempt from employment discrimination claims under the WLAD

---

[1] *See Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012); *Our Lady of Guadalupe School v. Morrissey-Berru,* 591 U.S. 732 (2020).

without limitation, whereas nonprofit religious organizations who do not qualify for the small employer exemption are subject to such claims unless they satisfy the burden to prove, as an affirmative defense, that the employee in question is a "minister." *Woods*, 197 Wash. 2d at 252 (majority opinion, endorsing concurrence by Yu, J., as "helpful" in applying the ministerial exemption under the WLAD); *id.* at 258 (Yu, J., concurring; stating employer must "raise[] the ministerial exception as an affirmative defense"); *id.* at 280 (Stephens, J., dissenting in part & concurring in part; describing the affirmative defense as "narrow.").

Nonprofit religious organizations in Washington are now subject to claims of discrimination unless they hire and accommodate[2] employees who disagree with, challenge, protest and even seek to change the nonprofit religious organization's beliefs and definition of its own religious mission. *Id.* at 237 (noting prospective employee "challenged" employer's religious self-understanding of its mission); *Woods v. Seattle's Union Gospel Mission*, U.S. Supreme Court No. 21-144, Petition for Certiorari, at 127a ("protest"); *id.* at 195a ("change").

---

[2] The WLAD's prohibition against religious discrimination in employment entails an obligation to accommodate employees' religious beliefs. *Kumar v. Gate Gourmet*, 180 Wash. 2d 481, 501, 325 P.3d 193 (2014). The employer must provide a reasonable accommodation, subject to a defense of "undue hardship," such as "violation of [a] governmental mandate," "substantial increased costs," "unreasonable safety risks," violation of a collective bargaining agreement, or preferential treatment to the detriment of other protected classes. *Suarez v. State*, 3 Wash. 3d 404, 424-28, 552 P.3d 786 (2024).

Such nonprofit religious organizations face investigative and enforcement actions by the Washington Human Rights Commission along with claims for injunctive relief and liability for damages and attorneys' fees and costs by applicants and employees. Wash. Rev. Code § 49.60.030(2) (private cause of action); Wash. Rev. Code §§ 49.60.120(4), .140, .150, .160 & .170 (administrative investigation and enforcement); Wash. Admin. Code, ch. 162-08 (same).[3]

One such nonprofit religious organization is the Union Gospel Mission of Yakima ("UGM"), which operates a homeless shelter and provides other social services to the community. *Union Gospel Mission of Yakima v. Ferguson*, 2024 WL 4660918, at *2 (E.D. Wash. Nov. 1, 2024). UGM serves everyone without distinction and it requires employees to follow Christian beliefs and behavior because the "overarching goal through all of its programs and services is to spread the Gospel of Jesus Christ and Christian teaching to others." *Id.*

---

[3] Washington recognizes a common-law tort of wrongful discharge in violation of public policy against all employers, including small employers who are exempt from claims under the WLAD, but the WLAD "is significantly broader than the tort of wrongful discharge[,]" permitting an employee to recover "damages sustained as a result of discriminatory refusal to hire, workplace discrimination, and discriminatory employment advertising, as well as discriminatory discharge." *Roberts v. Dudley*, 140 Wash. 2d 58, 76, 993 P.2d 901, 911 (2000). The common-law claim also "applies only in a situation where an employee has been discharged." *Id.*, 140 Wash. 2d at 76; *accord White v. State*, 131 Wn.2d 1, 18-20, 929 P.2d 396, 407-08 (1997) (declining to recognize tort claim for wrongful transfer in violation of public policy). Moreover, administrative investigation and enforcement, injunctive relief, and fee shifting are not available for the common-law claim. *Roberts*, 140 Wash. 2d at 76-77.

After the Washington State Attorney General threatened a Christian university for violating the WLAD because the school required its employees be aligned with its religious beliefs and standards of behavior, UGM brought this pre-enforcement challenge against the attorney general and others because its employment policies were similar and it had a number of open non-ministerial positions for which it needed to hire employees. *Id.* at \*1-2 (citing *Seattle Pacific Univ. v. Ferguson*, 104 F.4th 50, 60 (9th Cir. 2024)).

The district court below granted a preliminary injunction preventing enforcement of the WLAD against UGM for preferring and hiring those who agree with and will adhere to its religious belief and behavior requirements. *Id.* at \*5. The court ruled that it was likely UGM would prevail because the WLAD as interpreted in *Woods* burdens religion but is neither neutral and generally applicable nor narrowly tailored to achieve a compelling interest. *Id.* at \*3-5. This decision was correct and should be affirmed.

**I.      The WLAD is neither neutral nor generally applicable because it exempts small employers while denying an exemption for nonprofit religious organizations, in the absence of any reason to believe that small employers are less likely to engage in prohibited discrimination.**

The U.S. Supreme Court has "held time and again that the First Amendment demands 'neutrality' in actions affecting religion." *South Bay United Pentecostal Church v. Newsom*, — U.S. —, 141 S. Ct. 716, 720 (2021) (Kagan, J., dissenting; citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 532 (1993)).

7

"Facial neutrality is not determinative" because "[t]he Free Exercise Clause …
extends beyond facial discrimination" and "forbids subtle departures from
neutrality." *Lukumi*, 508 U.S. at 534.

Government regulations are not neutral "whenever they treat *any* comparable
secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593
U.S. 61, 62 (2021) (per curiam; emphasis in original; citing *Roman Catholic Diocese
of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) (per curiam)). "It is no answer that a State
treats some comparable secular businesses or other activities as poorly as or even
less favorably than the religious exercise at issue." *Id.* at 62 (citing Kavanaugh, J.,
concurring in *Roman Catholic Diocese*). Once a state creates a favored class, the
state must justify why religious organizations are excluded from the favored class.
*Roman Catholic Diocese*, 592 U.S. at 29 (Kavanaugh, J.).

"Whether two activities are comparable for purposes of the Free Exercise
Clause must be judged against the asserted government interest that justifies the
regulation at issue." *Tandon,* 593 U.S. at 62. "Comparability is concerned with the
risks various activities pose[.]" *Id*. "A government cannot put limits on religious
conduct if it 'fail[s] to prohibit nonreligious conduct that endangers' the
government's interests 'in a similar or greater degree.'" *South Bay,* 141 S. Ct. at 720
(Kagan, J.; quoting *Lukumi*, 508 U.S. at 543). Thus, in *Tandon* the Court enjoined
enforcement of California's COVID 19-related restrictions on at-home religious

8

activities pending review because "California treats some comparable secular activities more favorably than at-home religious exercise" in the absence of evidence that these comparable activities "pose[d] a lesser risk of transmission." 141 S. Ct. at 1297. Similarly, in *Lukumi*, the Court held local ordinances prohibiting animal sacrifice unconstitutional because concerns about animal suffering and mistreatment and improper disposal of remains were equally implicated by hunting, slaughter of animals for food, eradication of pests, and euthanasia of animals, which were not prohibited. 508 U.S. at 535-38.

In an analogous way, the WLAD's exemption of small employers implicates concerns about discrimination to an equal or greater extent than nonprofit religious organizations. The purpose of the WLAD is to eliminate and prevent discrimination in employment and other contexts. Wash. Rev. Code §§ 49.60.010, .030(1)(a) & .180. This purpose does not hinge upon the size of an employer. The small employer exemption was not enacted because small employers are less likely to engage in discrimination. Rather, the small employer exemption was enacted for the purposes of relieving small businesses of the regulatory burden of compliance with the WLAD and allocating the resources of the Washington State Human Rights Commission. *Griffin*, 130 Wn.2d at 68 (quoting former WAC 162-16-160(2)).

The State argues that employment by nonprofit religious organizations and employment by small employers are not "comparable" because "[h]aving fewer than

eight employees is not a secular activity[.]" State's Opening Brief, at 26. However, this argument is flawed because it ignores the risk to the government interest in question, i.e., eliminating discrimination in employment, which determines comparability. There is no reason to believe that nonprofit religious organizations are more likely to engage in discrimination than small employers. To paraphrase *Tandon,* the State of Washington cannot assume the worst when people go to work for a nonprofit religious organization but assume the best when they go to work for a small employer. 593 U.S. at 64 ("The State cannot 'assume the worst when people go to worship but assume the best when people go to work'").

The State's aligned amici admit that "[t]he WLAD's existing exemption for small employers … undermines Washington interest in eliminating discrimination to *some* extent[.]" ACLU et al. Amicus Brief, at 7; *accord id.* at 12. However, they argue that that the exemption of nonprofit religious organizations "would undermine those interests far more aggressively," *id.* at 7, and "have a greater effect on the labor market," *id.* at 9. This argument flawed because it is based on the definition of a small employer as having fewer than eight employees, without considering the total number of small employers or the total number of employees employed by small employers. *Id.* at 12. There is no reason to believe that nonprofit religious organizations comprise a larger number of employers or that they employ a larger

number of employees than small employers.[4] Because the it treats small employers more favorably than nonprofit religious organizations, the WLAD is not neutral or generally applicable.

## II. The WLAD's exemption of small employers establishes that there is no compelling interest in denying the same exemption to nonprofit religious organizations.

"A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Lukumi,* 508 U.S. at 546. "To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance 'interests of the highest order' and must be narrowly tailored in pursuit of those interests." *Id.* "At a minimum, [the First] Amendment prohibits government officials from treating religious exercises worse than comparable secular activities, unless they are pursuing a compelling interest and using the least restrictive means available." *Roman Catholic Diocese,* 592 U.S. at 21 (Gorsuch, J., concurring; citing *Lukumi*, 508 U.S. at 546).

In determining whether the state has a compelling interest, the Court does not focus on the state's interest in enforcing discrimination laws at a high level of generality because "the First Amendment demands a more precise analysis." *Fulton*

---

[4] A large percentage of Washington businesses are considered small businesses within the meaning of the WLAD, and they employ a significant number of employees in the state. *Griffin*, 130 Wn.2d at 68 (noting "75 percent of business establishments in Washington have fewer than nine employees" and "they employ only about 17.5 percent of the private employee work force" as of 1994).

*v. City of Philadelphia,* 593 U.S. 522, 541 (2021). Instead, the Court focuses on the asserted harm from exempting religious organizations from such laws. *Id.* The state's interest denying an exemption to religious organizations cannot be considered compelling when the state provides other exemptions from those laws. *Id.* at 1881-82. In this case, the exemption of small employers from employment discrimination claims under WLAD confirms that the State of Washington does not have a compelling interest in denying the same exemption to nonprofit religious organizations.

## CONCLUSION

This Court should resolve the issues presented in this case in accordance with the analysis set forth in this brief.

Date:  February 3, 2025

Respectfully submitted,

*/s/ George M. Ahrend*
George M. Ahrend
Ahrend Law Firm PLLC
*Counsel for Amici Curiae*
American Association of Christian Schools,
Association for Biblical Higher Education,
Association of Christian Schools
International, and Association of Classical
Christian Schools

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2025, I electronically filed the foregoing Brief of Amicus Curiae with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Date: February 3, 2025

*/s/ George M. Ahrend*
George M. Ahrend
Ahrend Law Firm PLLC
*Counsel for Amici Curiae*
American Association of Christian Schools,
Association for Biblical Higher Education,
Association of Christian Schools
International, and Association of Classical
Christian Schools

**Certificate of Compliance for Briefs**

**9th Cir. Case Number** 24-7246

I am the attorney or self-represented party.

**This brief contains 2,740 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/George M. Ahrend          **Date** February 3, 2025

14